**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **PLAINTIFF** | : | |
| | : | |
| **Josephine Thomas,** | : | **No. 3:20-cv-1487 (VLB)** |
| | : | |
| **v.** | : | |
| | : | **August 24, 2022** |
| **DEFENDANT** | : | |
| | : | |
| **Bridgeport Board of Education.** | : | |
| | : | |
| | : | |

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 42]**

Plaintiff Josephine Thomas is a teacher employed by the Defendant Bridgeport Board of Education. Ms. Thomas suffers from neuromyelitis optica, the treatment for which leaves her immunocompromised. Ms. Thomas taught her classes in-person daily until March 23, 2020 when, in response to the outbreak of COVID-19, Bridgeport adopted a remote learning program until the end of the school year. Bridgeport adopted a hybrid approach for the 2020-2021 school year, where students would alternate between in-person and remote attendance while teachers taught in-person every day. Due to her immunocompromised state, Ms. Thomas requested to teach remotely until a vaccine for COVID-19 was available. Bridgeport denied this request. Ms. Thomas subsequently brought this action alleging that Bridgeport failed to accommodate her requested accommodation in violation of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and Connecticut Fair Employment Practices Act ("CFEPA"). Defendant Bridgeport

Board of Education moves for summary judgment on all counts. For the following reasons, summary judgment is GRANTED.

## I.    FACTUAL BACKGROUND

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. The facts are read in the light most favorable to the non-movant, Ms. Thomas. This is prefaced with the materiality rule: "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  A dispute of an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Ms. Thomas has been a Spanish teacher at Bridgeport Central High School since 2007. [Dkt. 42-2 (56(a)(1) Stmt.) ¶ 3; Dkt. 44 (56(a)(2) Stmt.) ¶ 3].  Until March 2020, Ms. Thomas taught all her classes in-person. [Dkt. 42-2 ¶ 10; Dkt. 44 ¶ 10].  In-person instruction and classroom management were essential functions of her position. [Dkt. 42-2 ¶¶ 9, 15; Dkt. 44 ¶¶ 9, 15]. In March 2020, in response to the COVID-19 pandemic, Connecticut Governor Ned Lamont issued executive orders cancelling in-person school for the remainder of the 2019-2020 school year. [Dkt. 42-2 ¶5; Dkt. 44 ¶ 5]. Starting March 23, 2020, Bridgeport adopted a remote learning program that lasted until the end of the school year. [Dkt. 42-2 ¶ 6; Dkt. 44 ¶ 6]. In June 2020, Governor Lamont announced that Connecticut schools would be reopening for in-person instruction for the 2020-2021 school year. [Dkt. 42-2 ¶ 7;

Dkt. 44 ¶ 7]. Bridgeport adopted a hybrid schedule where teachers taught full time in-person from the classroom and students with the last name beginning A-L attended in-person on Mondays and Tuesdays, students with the last name beginning M-Z attended in-person on Thursdays and Fridays, and all students learned remotely on Wednesdays. [Dkt. 42-2 ¶ 16; Dkt. 44 ¶ 16]. In her affidavit, Ms. Thomas alleges that students had the option to remain fully remote and fewer than one-third of Bridgeport's student body—less than 500 out of 1600 students—opted into the hybrid model. [Dkt. 44 ¶ 8; Dkt. 44-1 (Thomas Aff.) ¶ 20].[1]

Ms. Thomas suffers from a central nervous system disorder called neuromyelitis optica. [Dkt. 42-2 ¶ 4; Dkt. 44 ¶ 4]. Her condition is managed with a "highly potent immune modulatory treatment" which leaves her immunocompromised and thereby posed "significantly high risk and considered vulnerable for SARS COV 2 infection." [Dkt. 44 ¶ 25]. On July 29, 2020, Ms. Thomas emailed Bridgeport requesting an accommodation to teach her classes remotely. [Dkt. 42-1 ¶ 17; Dkt. 44 ¶ 17]. Ms. Thomas'ss doctor submitted a note in support of her request stating that "[f]or her best interest it is recommended that she avoid any exposure to the virus. My recommendation is to take all the precautions to avoid the risk of exposure…. In view of her risk profile, it is in her best interest to work remotely." [Dkt. 42-1 ¶ 18; Dkt. 42-8 (Def. Ex. 5)]. In response, Bridgeport sent Ms. Thomas a letter requesting more information about her disability and potential reasonable accommodations that might be effective, taking into consideration the

---

[1] Ms. Thomas claims that she was assigned to teach 86 children for the 2020-2021 school year, 44 of whom chose to be fully remote. [Dkt. 44-1 ¶ 17]. On average, five students were present each day for in-person instruction in the Spanish class Ms. Thomas would have taught. [*Id.* at ¶ 21].

3

safety measures Bridgeport planned to implement. [Dkt. 42-1 ¶ 19]. The letter specifically listed each safety measure and asked Ms. Thomas'ss doctor to opine as to whether they are sufficient. [*Id.*]. Ms. Thomas'ss doctor responded with a letter detailing her medical condition, treatment, and recommendation regarding Bridgeport's precautionary measures:

> [M]y recommendation is to take all the necessary precautions to avoid any risk of exposure to SARS CoV2 infection. Despite the preventative measures outlined in the communication…the best measure that would work is to minimize any potential exposure of the virus to an immunocompromised host such as Ms. Thomas. My recommendation is to engage Ms. Thomas in remote teaching using tele technology for teaching at least until a viable vaccine against SARS CoV2 can safely be administered.

[Dkt. 42-2 ¶¶ 20-21; Dkt. 42-10 (Def. Ex. 7)].

After receiving this letter, Bridgeport determined that it could not grant Ms. Thomas's request for an accommodation to work remotely. [Dkt. 42-2 ¶ 22]. Bridgeport conveyed the denial in a letter to Ms. Thomas stating that her request "poses an undue burden to school operations" since "students will be in the schools and therefore we will need teachers to be present in their classrooms teaching." [Dkt. 42-2 ¶ 24; Dkt. 42-11 (Def. Ex. 8)]. Bridgeport asked Ms. Thomas to let them know if "there are any reasonable accommodations that may be put in place to allow [her] to teach in person," and provided her with other potential leave options. [*Id.*].

Ms. Thomas applied for and was granted leave under the Family and Medical Leave Act ("FMLA") for the entire 2020-2021 school year. [Dkt. 42-2 ¶ 34; Dkt. 42-7 (Def. Ex. 4) pp. 36 at 25, p. 37 at 2-6]. She also requested to use Bridgeport's sick leave bank to obtain paid leave. [Dkt. 42-2 ¶ 34; Dkt. 42-7 p. 38 at 2-4]. The

4

Bridgeport Superintendent has the discretion to grant or deny such requests and granted Ms. Thomas's request. [Dkt. 42-2 ¶¶ 36-37; Dkt. 42-7 p. 38 at 2-9]. Between her own sick leave and donated leave, Ms. Thomas was paid in full for the entire 2020-2021 school year. [Dkt. 42-2 ¶ 27; Dkt. 42-7p. 38 at 18-21]. Despite being fully vaccinated in April 2021[2], Ms. Thomas did not return to teaching during the 2020-2021 school year. [Dkt. 42-2 ¶ 40; Dkt. 42-7 p. 40 at 8-12, p. 42 at 4-6].[3]

## II.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson*

---

[2] At the time Ms. Thomas received her vaccination, the CDC defined fully vaccinated as "two weeks after receiving the last required dose of vaccine." *See* *https://www.cdc.gov/media/releases/2021/p0308-vaccinated-guidelines.html* (last visited August 22, 2022)

[3] Ms. Thomas claims that she was not able to return because at the time she received the vaccine, there was some debate as to its effectiveness on people with Ms. Thomas's medical conditions. After receiving the vaccine, she enrolled in a study a Yale to determine the efficacy of the vaccine. [Dkt. 42-7 p. 40 at 8-26].

*Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).   Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

III.    DISCUSSION

Ms. Thomas brings a failure to accommodate claim under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and Connecticut Fair Employment

Practices Act ("CFEPA").[4] Bridgeport argues that it is entitled to summary judgment on Ms. Thomas's claims because she failed to make out a *prima facie* case of disability discrimination, thus her requested accommodation is unreasonable as a matter of law.

"To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that '(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of [plaintiff's] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *See Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (citing *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009). If Ms. Thomas establishes a *prima facie* case, the burden shifts to Bridgeport to show that the accommodation would result in undue hardship. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). Here, the first and second elements are undisputed, therefore the Court will only address the third and fourth elements.

Bridgeport argues that Ms. Thomas cannot establish the third element—i.e., that she could perform her job with a reasonable accommodation. Ms. Thomas's claim turns on whether in-person teaching was an "essential function" of her job.

---

[4] The standards for a failure to accommodate claim are the same under the Rehabilitation Act and the ADA, and Connecticut courts generally use ADA standards to analyze CFEPA claims. *See Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995); *Ann Howard's Apricots Rest. V. Comm'n on Human Rights & Opportunities*, 237 Conn. 209, 224-26 (1996). Therefore, the Court will use the same analysis to assess Ms. Thomas's failure to accommodate claim under all three statutes.

The Equal Employment Opportunity Commission ("EEOC") defines "essential functions" as the "'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Shannon v. New York City Transit Authority*, 332 F.3d 95, 100 (2d Cir. 2003) (quoting *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1197) (citations to EEOC regulations omitted)). Courts must give "considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *Id.* (quoting *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998) (citations omitted)).

Ms. Thomas argues that in-person instruction is not essential to her job as a teacher and "she is able to perform the essential functions of her job through a remote teaching platform." [Dkt. 45 (Pl. Res.) p. 18].

Bridgeport argues, and the Court agrees, that in-person instruction is an essential function of Ms. Thomas's job as a high school Spanish teacher. It is undisputed that prior to March 2020 all classroom instruction was done in-person. [Dkt. 42-5 (Def. Ex. 2, Testani Aff.) ¶¶ 9-11]. In-person instruction did not cease to be an essential function, it was just temporarily suspended at the start of the COVID-19 pandemic—an unprecedented health emergency—the intention was always to return to in-person teaching pending the implementation of health and safety protocols. [*Id.* at ¶¶ 5-10].   In fact, the switch to remote learning has demonstrated how essential in-person learning actually is—students' academic

performance suffered, particularly in school districts with less in-person instruction. [*Id.* at ¶¶ 10, 12-13].[5]

In addition to the Court's deference to Bridgeport's determination that in-person learning is an essential function, the Court also considers the EEOC guidance regarding reopening of workplaces which states:

> The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship. These are fact-specific determinations. The employer has no obligations under the ADA to refrain from restoring all of an employee's essential duties at such time as it chooses to restore the prior work arrangement, and then evaluating any requests for continued or new accommodations under the usual ADA rules.

[Dkt. 42-13 (Def. Ex. 10. EEOC COVID-19 and the ADA FAQ) p. 16]. Under this guidance, in-person teaching did not cease to be an essential function. Ms. Thomas, in her opposition to Bridgeport's Motion for Summary Judgment, cites no caselaw supporting her assertion that in-person teaching is not an essential function of her job. In fact, the only mention of the third element of her claim is one sentence; "[r]egarding the third prong of a *prima facie* case, the plaintiff has demonstrated that she is able to perform the essential functions of her job through a remote teaching platform." [Dkt. 45 p. 18].

---

[5] The Court takes judicial notice of a National Bureau of Economic Research study on the effects of remote learning during the COVID-19 pandemic. *See* https://www.nber.org/papers/w29497 (last visited August 19, 2022).

Ms. Thomas's claim fails on the third element, therefore the Court need not address the fourth element—i.e whether Bridgeport failed to make reasonable accommodations for Ms. Thomas's disability. The Court recognizes that as an accommodation, Bridgeport allowed Ms. Thomas to take two types of leave. One was her personal leave, the other was leave donated by her colleagues. The Court notes, without deciding, that, since Ms. Thomas was not ill, both allowing her to use her own sick leave and donated leave could be considered a reasonable accommodation. However, the Court need not reach the issue.

"Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment." *Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144 (2d Cir. 2021). Ms. Thomas has not established a *prima facie* case of failure to accommodate, therefore the Court need not engage in the burden shifting analysis. There is no triable issue of fact and Ms. Thomas's claim fails as a matter of law. Accordingly, the Court grants summary judgment as to the Rehabilitation Act, ADA, and CFEPA claims.

**IV.     CONCLUSION**

For the above reasons, the Court grants summary judgement as a matter of law. The clerk is directed to close this case.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

**Dated at Hartford, Connecticut: August 24, 2022**